**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**WILLIE GATEWOOD, et al.**                                                    **PLAINTIFFS**

**v.**                                                    **CIVIL ACTION # 3:07cv82-KS-MTP**

**KOCH FOODS OF MISSISSIPPI, LLC**                                        **DEFENDANT**

## Memorandum Opinion and Order

This cause is before the Court on the motion for summary judgment [Doc. # 40] filed by the Defendant, Koch Foods of Mississippi, LLC ("Koch Foods"), and the motion for summary judgment [Doc. # 44] filed by the Plaintiffs.  Because the Plaintiffs have raised a genuine issue of material fact as to: (1) whether donning and doffing of sanitary equipment constitutes "work" under the FLSA; and (2) whether donning and doffing of required sanitary gear is both integral and indispensable to the Plaintiffs' principal activities, those portions of the Defendant's motion for summary judgment should be denied, and the Plaintiffs' motion for summary judgment should be denied.  But because the Plaintiffs have failed to raise a genuine issue of material fact that would preclude this Court from enforcing § 203(o) to bar compensation claims based on an established custom or practice under a collective bargaining agreement, that portion of the Defendant's motion for summary judgment should be granted.  Therefore, for the reasons fully set forth below, the Defendant's motion for summary judgment [Doc. # 40] should be **granted in part and denied in part**, and the Plaintiffs' motion for summary judgment [Doc. # 44] should be **denied**.

## I. FACTUAL BACKGROUND

This lawsuit is based on the compensation policies of three chicken processing plants located in southern Mississippi.  In their collective action, the Plaintiffs allege that their employer has wrongfully denied them compensation and accrued overtime because it does not pay them for significant periods of work they must perform while off the clock.  The Defendant alleges that these activities are not work under federal law, and that any claim for this time is barred based on an established custom under a collective bargaining agreement.

Koch Foods operates three processing facilities relevant to this lawsuit: (1) a live processing plant in Morton, Mississippi (the "Live Processing Plant") that is dedicated to processing and packaging live chickens; (2) a de-bone plant in Forest, Mississippi (the "De-bone Plant") where previously processed chickens are de-boned, dismembered, and then marinated, frozen, and packaged; and (3) a prepared foods plant in Morton, Mississippi (the "Prepared Foods Plant") where previously processed chicken is marinated, breaded, battered, fried, and packaged.  Approximately 2150 hourly employees work at these three plants, and approximately 1710 of them are production employees.

Workers at each of the plants wear a variety of safety and sanitary gear while on duty. Employees who enter or work in the processing area at each of the three plants are required to wear a combination of safety and sanitary gear, including: (1) a smock; (2) a hairnet and/or beardnet; and (3) earplugs. *See* Pl.'s Br. at 10 [Doc. # 43] (May 16, 2008); *see also* Def's Br. at 3 [Doc. # 45] (May 16, 2008).  Although smocks are distributed daily to all employees, the remaining gear can either be exchanged weekly or can be kept by an employee for their entire career at the plant.

2

A number of additional items must be worn by employees at each plant based on their differing job duties.  Those that work at the Live Processing Plant must also wear rubber shoe covers. *Id*.  Any employee that handles chicken product is required to wear rubber or latex gloves, depending upon their duties. *Id.* at 6.  Any employee that uses scissors or knives must wear mesh gloves and/or plexiglass sleeves. *Id.* at 7.  Other job-specific items include plastic aprons, eye protection, and cotton gloves, some of which are worn at the option of other employees. *Id*.

Employees that work on the production line at one of the three plants are paid on the "line time" or "master badge time" system. *See* Def.'s Ex. 12 at 5-7 [Doc. # 41-2] (May 16, 2008).  At the beginning of each shift, the supervisor of each department swipes a "master badge" as the chicken product arrives, and then swipes it again once all of the chicken product has been processed. *Id*.  Although employees swipe personal time cards upon arrival and departure from the plant, their hours worked are calculated based on the line time that is recorded by their supervisor. *Id*.  Subject to a few minor exceptions, the personal time cards of employees are used primarily to track attendance and ensure each employee was actually present and on the production line. *Id*.

Employees at each plant are given two thirty-minute unpaid breaks during the day.  During break, employees are not required to leave the processing area, but are permitted to do so if they choose. *See* Def.'s Ex. 1 ¶ 22 [Doc. # 40-2] (May 16, 2008).  But employees that wish to eat, use the restroom, or go outside during their breaks are required to remove their smock, aprons, and gloves. *Id.*  Employees are not compensated for time spent walking to and from the production line during their breaks, or for time spent donning and doffing required sanitary gear

when they eat, go outside, or use the restroom during their breaks.

The named Plaintiffs filed suit against Koch Foods on February 9, 2007.  They brought their suit as a representative action pursuant to § 216(b) of the Fair Labor Standards Act.  They claim that Koch Foods has instituted an unlawful system of compensation that denies them any wages for required "off the clock" work. *See* Pl.'s Compl. ¶ 4 [Doc. # 1] (Feb. 9, 2007).  Specifically, they allege that the Koch Foods compensation system fails to appropriately compensate them for : (1) time spent removing required sanitary equipment prior to enjoying their unpaid breaks; (2) time spent donning and doffing sanitary equipment before and after their shift; (3) time spent navigating plant security; and (4) time spent walking to and from the employee break area. *Id.* at ¶¶ 13-21. According to the Plaintiffs, these "[d]onning, doffing, washing activities, compensable unpaid breaks and walking duties all add up to a significant amount of time every day for which Plaintiffs and others similarly situated are not paid." *Id.* at ¶ 22.  The Plaintiffs seek relief for unpaid wages and overtime they claim are due to them, as well as associated costs and attorneys fees.

The Defendant has moved for summary judgment on two separate theories: (1) donning and doffing the sanitary gear at issue is a non-compensable preliminary and postliminary activity under the Portal to Portal Act; and (2) the Plaintiffs have waived their claim for overtime compensation for donning and doffing activities under § 203(o) of the Fair Labor Standards Act.  Additionally, the Defendant asserts that the activity in question does not constitute "work" under the Fair Labor Standards Act, and that the continuous workday rule bars compensation for post-donning and pre-doffing walking time.  The Plaintiffs have also moved for summary judgment under the Portal to Portal Act, claiming that the activities in question are integral and

4

indispensable to their principal activities as a matter of law.  After laying out the applicable

standard of review, the Court will fully consider each basis for summary judgment below.


## II. STANDARD OF REVIEW

### 1. Summary Judgment

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(c).  To support a motion for summary judgment, "the moving party...[has] the

burden of showing the absence of a genuine issue as to any material fact." *Burleson v. Tex. Dept.*

*of Criminal Justice,* 393 F.3d 577, 589 (5th Cir 2004).  Material facts are those that "could affect

the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235

(5th Cir. 2003) (citations omitted).  Disputes about material facts are genuine "if the evidence is

such that a reasonable jury could return a verdict for the non-moving party" on that issue.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the court views all evidence "in the light

most favorable to the non-moving party" and "draw[s] all reasonable inferences in its favor."

*Breen v. Texas A&M Univ*., 485 F.3d 325, 331 (5th Cir. 2007).  If the movant satisfies its initial

burden, then the burden shifts back to the nonmoving party to produce evidence indicating that a

genuine issue of material fact exists for each essential element of its case. *Rivera v. Houston*

*Indep. Sch. Dist.*, 349 F.3d 244, 246-47 (5th Cir. 2003).  The nonmovant is not entitled to merely

rest on her pleadings, but must set forth "specific facts showing there is a genuine issue for trial." *DirecTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).  If the nonmovant responds and still "no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

**1.  Portal to Portal Act**

The Fair Labor Standards Act ("FLSA") ensures that employees are paid for all hours worked in a given workweek, including overtime. *See* 29 U.S.C. §§ 206, 207 (2000); *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 602 (1944). When first passed in 1938, the FLSA did not define the terms "work" or "workweek." After the Supreme Court broadly construed those terms, holding that factory workers must be paid for minutes spent walking from company time clocks to their workstations, Congress amended the FLSA with the Portal to Portal Act in 1947. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 691-92 (1946).[1]

The Portal to Portal Act narrowed the coverage of the FLSA by removing two activities that had been interpreted as compensable by the Supreme Court.  According to the Acts terms, activities that are not compensable include:

---

[1] In *Tennessee Coal*, the Court defined "work" or "employment" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598 (1944).

Except as provided in subsection (b) of this section, no employer shall be subject to any liability...on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947--

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

> (2) activities which are **preliminary** to or **postliminary** to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

*See* 29 U.S.C.. § 254(a) (2000) (emphasis added).[2]  According to the "continuous workday rule," the "workday" is generally defined as "the period between the commencement and completion on the same workday of an employee's principal activity or activities." *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 29 (2005).

In *Steiner*, the Supreme Court interpreted the Act to conclude that  "activities performed either before or after the regular work shift, on or off the production line, are compensable...if those activities are an **integral and indispensable** part of the principal activities for which covered workmen are employed." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956) (emphasis added).[3]  An activity is integral and indispensable when it is "necessary to the business" and

---

[2] There is "[n]o categorical list of 'preliminary' and 'postliminary' activities except those named in the [Portal Act] ... since activities which under one set of circumstances may be 'preliminary' or 'postliminary' activities, may under other conditions be 'principal' activities." 29 C.F.R. § 790.7(b).

[3] In *Alvarez*, the Court upheld the *Steiner* rule, stating that:

performed "primarily for the benefit of the employer." *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 401 (5th Cir. 1976).  The exception itself must be construed narrowly. *Id*. at 398-99.

### 2.  The 203(o) Defense

The FLSA includes a provision that removes from compensability time spent washing and changing clothes at the start and end of each workday.  According to the terms of the statute:

> (o) Hours Worked.--In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

*See* 29 U.S.C. § 203(o) (2000).

Though not binding on the district court, the Wage and Hour Division of the Department of Labor has issued an opinion letter stating that the term clothes in § 203(o) "include[s] items worn on the body for covering, protection, or sanitation." *See* DOL Wage & Hour Op. Ltr.. FLSA2002-2 (June 6, 2002).  Reviewing courts are divided as to whether the provision operates as an exemption or merely a definition and prerequisite for a finding of hours worked. *Compare Anderson v. Cagle's, Inc.*, 488 F.3d 945, 958 (11th Cir. 2007) ("§ 203(o) is not an exemption

---

Thus, under *Steiner*, activities, such as the donning and doffing of specialized protective gear, that are performed either before or after the regular work shift, on or off the production line, are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a)(1).

*See IBP, Inc. v. Alvarez*, 546 U.S. 21, 29 (2005).

under the FLSA but is instead a definition that limits the scope of the FLSA's key minimum wage and maximum hour provisions.") *with Alvarez v. IBP, Inc.*, 339 F.3d 894, 905 (9th Cir. 2003), *aff'd*, 546 U.S. 21 (2005), (holding that "FLSA exemptions [like § 203(o)]...are to be narrowly construed against the employers seeking to assert them.").[4]

## III.  APPLICATION AND ANALYSIS

### 1.  Is donning and doffing "work" under the FLSA?

Koch Foods raises, albeit indirectly, the issue of whether the donning and doffing of sanitary gear is "work" under the FLSA. *See* Def.'s Br. at 19 n.22 [Doc. # 43] (May 16, 2008). They cite to the *Pilgrim's Pride* case from the Eastern District of Texas for the proposition that the donning and doffing of sanitary equipment cannot be considered work under the Act. *See Anderson v. Pilgrim's Pride Corp.*, 147 F. Supp. 2d 556, 561 (E.D. Tex. 2001).  After defining "work" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer," the district court in *Pilgrim's Pride* concluded that donning, doffing, and cleaning of sanitary equipment was not "work" under the Act. *Id.*  The court found that "[d]ue to the fact that the donning and doffing of these items takes seconds to accomplish and requires very little concentration, the Court finds that the donning and doffing of these items does not involve 'physical or mental exertion', and, therefore, does not qualify as work within the meaning of the FLSA." *Id.*

---

[4] In *Livadas*, the Supreme Court referred to § 203(o) as an "opt out" statute in the context of other issues. *See Livadas v. Bradshaw*, 512 U.S. 107, 131-32 (1994).

The Defendant also relies on *Reich v. IBP, Inc*., 38 F.3d 1123, 1127 (10th Cir. 1994), which held that the donning and doffing of standard, non-unique protective material, such as hard hats, earplugs, safety footwear, and safety eyewear, was not "work" under the FLSA. The Tenth Circuit relied upon the Supreme Court's definition of work as espoused in *Tennessee Coal* and determined that the activity was not work because it required little or no concentration and little or no physical or mental exertion.[5]  Yet the continuing validity of *Reich* has been called into doubt by district courts in the Tenth Circuit in light of the Supreme Court's methodology in *Alvarez. See Garcia v. Tyson Foods, Inc*., 474 F. Supp. 2d 1240, 1246 (D. Kan. 2007) ("the court is convinced that the Circuit, if given the opportunity to revisit the issues in *Reich*, would approach its analysis of the pertinent issues differently in light of *Alvarez*.").

The courts in both *Pilgrim's Pride* and *Reich* overemphasize the significance of "exertion" in determining when "work" has been performed.  Although the term "exertion" in everyday speech conveys a sense of heft or substantial effort,[6] focus on that connotation threatens to misapply the Supreme Court's precedent on the precise issue. *See Armour & Co. v. Wantock,* 323 U.S. 126, 133 (1944) ("an employer ... may hire a man to do nothing, or to do nothing but

---

[5] "Requiring employees to show up at their workstations with such standard equipment is no different from having a baseball player show up in uniform, a businessperson with a suit and tie, or a judge with a robe. It is simply a prerequisite for the job, and is purely preliminary in nature." *Reich v. IBP, Inc*., 38 F.3d 1123, 1127 (10th Cir. 1994).

[6] *See Webster's II New College Dictionary*, (Hughton Mifflin 1995) (defining "exert" as "to put forth (e.g., strength)" or "to bring to bear")*; see also* Merriam-Webster Online, http://www.merriam-webster.com/dictionary/exert (accessed July 18, 2008) (defining "exert" as "to put forth (as strength)" or "to put (oneself) into action or to tiring effort" or "to bring to bear especially with sustained effort or lasting effect"); *see also* Dictionary.com, http://dictionary.reference.com/browse/exert (accessed July 18, 2008) (defining "exert" as "to put forth or into use, as power; exercise, as ability or influence; put into vigorous action: to exert every effort" or "to put (oneself) into strenuous, vigorous action or effort").

wait for something to happen").  To be considered work, the activity need only be "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944).

This Court determines that the better view of what constitutes "work" was recently adopted by the Third Circuit in *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 373 (3rd Cir. 2007).  In *De Asencio*, the Third Circuit held that "it was error for the jury instruction to direct the jury to consider whether the gear was cumbersome, heavy, or required concentration to don and doff" in order to determine it was work. *Id.*  The appeals court found that this instruction "impermissibly directed the jury to consider whether the poultry workers had demonstrated some sufficiently laborious **degree** of exertion, rather than some form of activity controlled or required by the employer and pursued for the benefit of the employer." *Id.* (emphasis in original). Because "exertion is not in fact required for activity to constitute 'work,'" the appeals court ruled the instruction in error. *Id.*[7]

This Court therefore finds that the Plaintiffs have raised a genuine issue of material fact as to whether donning and doffing the sanitary gear in question constitutes "work" under the

---

[7] Several district courts reviewing similar claims have come to the same conclusion. *See Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790, 805 (M.D. Tenn. 2008) ("[t]he collective wisdom of these circuit courts makes crystal clear that exertion is not required for an activity to constitute work under FLSA and the Portal-to-Portal Act.); *see also Davis v. Charoen Pokphand (USA), Inc.*, 302 F. Supp. 2d 1314, 1322 (M.D. Ala. 2004) (rejecting argument from *Pilgrim's Pride* and *Reich* because the courts "apply an overly narrow interpretation of the *Muscoda* definition of work."); *Gonzalez v. Farmington Foods, Inc.*, 296 F. Supp. 2d 912, 924 (N.D. Ill. 2003) (finding that "donning and doffing of sanitary and safety equipment, equipment cleaning and knife sharpening constitute work because these activities are 'controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer.'").

FLSA.[8]  In so finding, the Court expresses no opinion on whether the work that the Plaintiffs

might have performed would be considered *de minimus* under 29 C.F.R. § 785.47. *See Lindow v.*

*United States*, 738 F.2d 1057, 1062-63 (9th Cir. 1984).


## 2.  Are activities integral and dispensable to the job?

Koch Foods also moves for summary judgment under the argument that the donning and

doffing of sanitary gear is not integral and indispensable to the Plaintiffs' jobs, and compensation

is therefore precluded by the Portal to Portal Act. *See* Def.'s Br. at 19 [Doc. # 43] (May 16,

2008).  In order to determine whether the Portal to Portal Act precludes the Plaintiffs' claims, the

Court must examine whether the sanitary and safety equipment at issue is "integral and

indispensable" to the Plaintiffs' principal activities and thus a part of their continuous workday.[9]

If the gear is "integral and indispensable," then the donning and doffing of those items are

principal activities and the time spent doing so is compensable under the FLSA.

It is undisputed that Koch Foods requires processing employees to wear–at a

minimum–smocks, hairnets, and earplugs. *See* Def.'s Br. at 5 [Doc. # 43] (May 16, 2008).[10]  The

---

[8] Because this issue was only raised by the Defendant indirectly, the Court will permit them to raise the issue in further briefing if desired.

[9] *See Lugo v. Farmer's Pride, Inc.*, 2008 WL 161184 at *4 (E.D. Pa. Jan. 14, 2008) ("Thus, in evaluating whether workday activities are excluded from FLSA coverage by the Portal-to-Portal Act, it must be determined whether an activity is 'integral and indispensable' to the principal activity and part of the continuous workday.").

[10] There remains a variety of additional sanitary and safety gear worn by some employees, a portion of which is mandatory and a portion of which is optional.  The Court's current holding touches only the mandatory sanitary and safety gear discussed.  Because the factual issues are undeveloped on optional sanitary and safety gear, the Court declines to grant summary judgment on those issues at this

rules regarding sanitary gear are outlined in a series of Good Management Practices ("GMPs") that inform employees about which sanitary items must be worn. *See* Pl.'s Ex. 10 [Doc. # 52] (June 9, 2008).  According to company documents, the GMPs are promulgated "to place quality and food safety atop our company's primary objectives" so that Koch Foods "will remain a leading supplier of safe, high quality poultry products for the public." *Id.*  The Plaintiffs have stated that, if they enter the processing area without wearing the gear, a Quality Assurance Employee will "holler out" to stop the employee. *See* Pl.'s Res. Br. at 9 [Doc. # 50] (June 9, 2008).  The Plaintiffs have each testified that their "principal work activity was not just to process chickens, but to process chickens in an uncontaminated manner." *See* Pl.'s Ex. 1 [Doc. # 51-1] (June 9, 2008). And applicable federal regulations require that employers implement "methods for maintaining cleanliness" including "wearing outer garments...in a manner that protects against contamination" and "wearing...hairnets...or other effective hair restraints." *See* Pl's Ex. 31 [Doc. # 53-14] (June 9, 2008).

The Defendant argues that the sanitary equipment is not integral and indispensable to the Plaintiffs' duties, and therefore donning and doffing it is not compensable under the terms of the Portal to Portal Act. *See* 29 U.S.C. § 254(a) (2000).  First, they claim that the Supreme Court's rationale in *Steiner* precludes compensation for "changing clothes and showering under normal conditions." *See* Def.'s Br. at 25 [Doc. # 43] (May 16, 2008).  They also argue that wearing sanitary gear is done "for the primary benefit of the consuming public and employees." *See* Def.'s Reb. Br. at 8 [Doc. # 59] (June 19, 2008).  Finally, they argue that even though Koch

---

time.

Foods "may also benefit from the sanitation requirements," that alone does not make the activity compensable under the Act. *Id.*

Consistent with its argument that changing clothes "under normal conditions" is not compensable, the Defendant relies upon *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 594 (2nd Cir. 2007), to argue that the use of the sanitary gear at issue is not both integral and indispensable as required to be compensable under the Act.  In *Gorman*, the Second Circuit relied on *Steiner* to articulate a distinction between the terms "indispensable" and "integral" as used in prior precedent.  While "indispensable" means only "necessary," the term "integral" adds the requirement that the activity be "essential to completeness...organically linked...[or] composed of constituent parts making a whole." *Id.* at 592.[11]  Therefore, unless an activity is essential to complete the employee's task, it is excluded from compensation under the Act.

The Plaintiffs respond by arguing that their principal activity "is not to process poultry products, but to process *uncontaminated* poultry products." *See* Pl.'s Resp. Br. at 13 [Doc. # 13] (June 9, 2008) (emphasis in original).  As such, they claim that "the required donning, doffing and sanitizing activities are essential to plaintiffs' principal activity of producing safe, sanitary and uncontaminated poultry products." *Id.*[12]

---

[11] At least one district court from the Seventh Circuit has called the *Gorman* interpretation of *Steiner* "truly bizarre." *See Spoerle v. Kraft Foods Global, Inc.*, 527 F. Supp. 2d 860, 864 (W.D. Wis. 2007) ("The [Second Circuit in *Gorman*] appears to be saying that the holding of *Steiner* does not apply unless the 'work is done in a lethal atmosphere.' In other words, unless the activity is necessary to prevent the employee from actually dying, it is not 'integral' to a principal activity. From a public policy perspective, this reading is obviously troubling because it creates an uncomfortable distinction between hazards that kill and hazards that maim (or pose only a risk of death) and suggests that an employee is entitled to compensation for protecting herself from the former only.").

[12] The Fifth Circuit has warned against too narrow a definition of an employee's principal activities.  *See Dunlop v. City Elec., Inc.*, 527 F.2d 394, 400 (5th Cir. 1976) ("[b]y narrowly defining the

The Court finds that a genuine issue of material fact exists as to whether the Plaintiffs' pre- and post-shift donning and doffing activities are compensable under the FLSA and the Portal to Portal Act.  First, a genuine issue of material fact exists as to whether the donning and doffing activity is necessary to Koch Foods' business.  The Defendant argues that "even if Koch Foods were the primary beneficiary of the clothes changing and washing" the activities are not "essential tasks to the ordinary course of business." *See* Def.'s Br. at 25 [Doc. # 43] (May 16, 2008).  Though employees of Koch Foods might be physically able to process chickens without sanitation gear, the resulting product would be adulterated and unmarketable.  And undisputed evidence shows that Koch Foods' ordinary course of business is to produce and market a wholesome poultry product.[13]  As a practical matter, therefore, the Plaintiffs must work under the sanitary conditions that Koch Foods has already implemented in order for their services to have any real value.

The Court also finds that a genuine issue of material fact exists as to whether the Plaintiffs' donning and doffing was performed primarily for the benefit of Koch Foods.  It is undisputed that employees must remove sanitary gear anytime they leave the plant, while on break or returning home after their shift, when they go to the restroom, and when they choose to eat during their break. *See* Pl.'s Res. Br. at 11 [Doc. # 50] (June 9, 2008).  The Plaintiffs are not permitted to take their smocks home, and are not permitted to wear smocks of their own

---

principal activity of the employees in the instant case as that of 'installing and repairing electrical wiring', the district court severely limited the range of potentially compensable activities, thus committing the precise error which Congress sought to avoid in its careful wording of the statute.").

[13] *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 903 (9th Cir. 2003), *aff'd*, 546 U.S. 21 (2005) ("it is beyond cavil that the donning, doffing, washing, and retrieving of protective gear is, at both broad and basic levels, done for the benefit of IBP.").

choosing.[14]  While leaving the smocks at the factory for laundering undoubtedly benefits both the

Plaintiffs and Koch Foods, requiring removal prior to walking outside or going to the restroom

can only benefit Koch Foods.  Requiring removal prevents the smocks from being exposed to

either the restrooms or the outdoors, and limits contamination to the chicken products–not to the

employees.  Moreover, Koch Foods retains tight control over the laundering and distribution of

the smocks, and employees that wish to take them home and launder them personally will face

disciplinary actions. *Id*. at 20.[15]

       Although the employees undoubtedly derive some benefit from the use of sanitary gear,

the same gear also allows Koch Foods to maintain the cleanliness essential to prevent

contamination to its poultry products.[16]  As one district court recently explained, "[t]his benefit is

enormous when one considers the damage that would result to the defendants if they were to sell

a contaminated food product." *Jordan v. IBP, Inc*., 542 F. Supp. 2d 790, 807 (M.D. Tenn.

---

[14] In granting summary judgment in favor of the employer in a factually similar case, the district court in *Alford* noted the importance of the fact that employees were permitted to take safety and sanitary items home and arrive at work already wearing them. *See Alford v. Perdue Farms, Inc.*, 2008 WL 879413 at *6 (M.D. Ga. Mar. 28, 2008) (finding that time spent donning generic sanitary and safety gear not compensable because requiring employee to don their "hair and beard nets, ear plugs, boots, and caps prior to beginning work" is "something that the employee can do at his home, in his car, or whenever suits his convenience.").

[15] *See Ballaris v. Wacker Siltronic Corp*., 370 F.3d 901, 911 (9th Cir. 2004) (donning and doffing of uniforms by employees at a silicon chip manufacturing plant benefitted the employer because the uniforms "were required to limit potential cleanroom contamination, and thereby to assist the employer in ensuring the quality of the silicon chips manufactured at the plant.").

[16] *See Dunlop v. City Elec., Inc*., 527 F.2d 394, 400 n.11 (5th Cir. 1976) ("[t]he fact that the employees too may have benefitted from filling out time sheets recording their hours worked and the compensation due them is not inconsistent with the conclusion that the work was 'an integral and indispensable function of the defendant business.'").

16

2008).[17]  Other district courts have reached similar conclusions, finding summary judgment inappropriate on these facts. *See Chao v. Tyson Foods, Inc.*, 2008 WL 2020323 at * 9 (N.D. Ala. Jan. 22, 2008) (denying summary judgment because "a question of material fact remains as to whether the benefit it receives is so significant that it is Defendant, and not Defendant's employees, who receives the primary benefit thereof.").

Finally, the Court finds that the Defendant's argument regarding the application of *Steiner* and the "changing clothes...under normal conditions" rationale to be misplaced. *See* Def.'s Br. at 25 [Doc. # 43] (May 16, 2008).  As the district court of Wisconsin articulated in *Spoerle*, such a reading of *Steiner* invites an unusual application of the terms integral and indispensable. *See Spoerle v. Kraft Foods Global, Inc*., 527 F. Supp. 2d 860, 864 (W.D. Wis. 2007).  Even though the Plaintiffs in this case do not work in the highly toxic atmosphere of a battery factory, their equipment is worn for sanitary and safety purposes and is required both by law and company policy.  They could not perform their jobs without it, and as such, it is not "merely a convenience" provided for their sole benefit. *Id*. at 865.

### 3.  Collective Bargaining Agreement and 203(o) defense

Koch Foods also moves for summary judgment under 29 U.S.C. § 203(o).  As discussed *supra*, the statute excludes time spent "changing clothes or washing at the beginning or end of each workday which was excluded from measured working time...by the express terms of or by

---

[17] As the district court in *Jordan* further explained, "[t]he minor benefit to the employees of keeping their street clothes clean pales by comparison" to the benefit enjoyed by the employer. *See Jordan v. IBP, Inc*., 542 F. Supp. 2d 790, 807 (M.D. Tenn. 2008) (granting summary judgment in favor of employees on the integral and indispensable test of the Portal to Portal Act).

custom or practice under a bona fide collective-bargaining agreement." *See* 29 U.S.C. § 203(o) (2000).[18]  As the Supreme Court has observed, the "union-represented employees have the full protection of the minimum standard, absent any agreement for something different." *Livadas v. Bradshaw*, 512 U.S. 107, 131 (1994).  When employees "opt out" of this protection when entering into a collective bargaining agreement, they cannot later advance a claim for compensation based on the same activity.

The majority of employees at all three Koch Foods facilities are covered by Collective Bargaining Agreements ("CBAs") struck between Koch Foods and the United Food and Commercial Workers Union, Local 1529.[19]  The De-Bone and Prepared Foods plants were unionized in 2004.  After unionization, Koch Foods and the union negotiated and executed a Collective Bargaining Agreement to run from September 21, 2004, through September 21, 2007 ("2004 Forest CBA").  The 2004 Forrest CBA remains in effect under a temporary extension agreement at both plants.  The Live Processing Plant in Morton was unionized before Koch Foods acquired it in 2002, and is covered by its own CBA ("2005 Morton CBA").  Since acquisition, Koch Foods has negotiated and struck two CBAs with the Union to cover the Live Processing Plant.

Each CBA contains language affirming that the agreements "represents the entire

---

[18] Based on the terms of the statute, the defense can only apply to time spent "changing clothes" at the "beginning and end of each workday." *See* U.S.C. § 203(o) (2000).  Therefore, the Plaintiffs' remaining claims related to midday work breaks and unpaid waiting time at the beginning of each day are not impacted by this analysis.

[19] The CBAs apply to all hourly production employees as well as maintenance and sanitation departments.  Quality assurance employees are not covered by the CBAs. *See* Def.'s Br. at 10 n.13 [Doc. # 43] (May 16, 2008).

agreement and understanding between the parties" and that the Union and the company "voluntarily and unqualifiedly waive" any "right to make demands and proposals with respect to any subject or matter not removed by law from the area of the collective bargaining agreement." *See* Def.'s Br. at 11-12 [Doc. # 43] (May 16, 2008).

During negotiations for each of the CBAs, the Union's team never proposed, or attempted to negotiate for, any compensation for time spent donning and doffing the sanitary gear at issue. *Id.* at 13.  Although the Union never negotiated for additional compensation, employees at each plant were acutely aware that they were not compensated for the time. *See, e.g.*, Def.'s Ex. 16 at 5-6 [Doc. # 42-4] (May 16, 2008); Def.'s Ex. 17 at 6-7 [Doc. # 42-5] (May 16, 2008).  One of the named Plaintiffs, Verida King, even stated that she complained to Union representatives about the compensation policies at issue prior to the most recent negotiations. *See* Def.'s Ex. 10 at 11 [Doc. # 40-11] (May 16, 2008). And both parties agree that neither of the finalized CBAs address the compensability of donning and doffing the sanitary gear at issue.  Therefore, there is no "express term" of a collective bargaining agreement that would support non-compensation.  The Defendant instead contends that "the undisputed facts unequivocally demonstrate that Koch Foods' employees acquiesced to Koch Foods' policy of not paying production employees for clothes changing and washing time." *See* Def.'s Br. at 35 [Doc. # 43] (May 16, 2008).

The Defendant primarily relies upon *Bejil v. Ethicon, Inc*, 269 F.3d 477, 479 (5th Cir. 2001), to support their § 203(o) defense.  Although that agreement was also silent as to compensation for similar activities, the union that negotiated the CBA in *Bejil* had repeatedly addressed the issue of the time needed to don and doff sanitary gear. *See Bejil v. Ethicon, Inc*., 269 F.3d 477, 479 (5th Cir. 2001) (finding a custom when "[e]thicon and the employees'

19

union...have addressed the issue of compensation for the time required to don and doff protective coverings on several occasions.").  There was no doubt that the issue was addressed by the negotiators in *Bejil*, even if the ultimate agreement was silent.  The *Bejil* court concluded that "where the union and employer discuss an issue, the result may be custom or practice, even if the collective bargaining agreement is silent on the issue." *Id*. at 480.[20]  The Second Circuit took a similar position in *Arcadi v. Nestle Food Corp.*, 38 F.3d 672, 675 (2nd Cir. 1994), finding that "[i]f the parties to a collective bargaining agreement negotiate over an issue and have an understanding that resolves it, then a 'practice' exists, even in the absence of express written terms."[21]

The Defendant also relies on *Anderson v. Cagle's, Inc*., 488 F.3d 945, 958 (11th Cir. 2007), for a more robust reading of what silence in a CBA means in terms of a custom or practice under § 203(o).  In *Cagle's*, the appeals court upheld the district court's application of § 203(o) in barring the claims of processing employees for changing clothes before and after their time on the production line.  That court concluded that "[a]bsence of negotiations cannot in this instance

---

[20] In *Hoover v. Wyandotte Chemicals Corp*., 455 F.2d 387, 389 (5th Cir. 1972), the Fifth Circuit took a similar approach, finding a custom or practice when negotiations touched on the precise issue, regardless of the policy's duration. ("The defendant in this case has shown a history of its dealings with the plaintiffs' union in exempting from payment any time exceeding fifteen minutes in which an employee spends changing clothes and showering. Furthermore, it has been shown that the collective bargaining negotiations between the union and the company encompassed the company's policy concerning payment for such activities.").

[21] This approach is consistent with that taken by the Eastern District of Texas in *Anderson v. Pilgrim's Pride Corp*., 147 F. Supp. 2d 556, 565 (E.D. Tex. 2001) (finding a custom or practice existed, despite the silence of the CBA, when "the [union] proposed compensating line employees for "wait time" and the time spent donning and doffing sanitary clothing and equipment...[but the company] rejected this proposal...").

equate to ignorance of the policy. Rather, it demonstrates acquiescence to it." *Id.*[22]   The Defendant adopts this assertion on its face, and argues that "[t]his absence of collective bargaining negotiations on the issue further proves acquiescence to Koch Foods' compensation practice." *See* Def.'s Br. at 36 [Doc. # 43] (May 16, 2008).

When negotiations never touched on the issue, other district courts have looked to the duration of the alleged custom or practice to search for acquiescence. In *Kassa v. Kerry, Inc.*, 487 F. Supp. 2d 1063, 1068 (D. Minn. 2007), the district court of Minnesota was able to find a custom or practice based on the duration of the policy, even in the absence of specific negotiations. *Id.*   The court in *Kassa* placed the burden on the plaintiff to show that "its policy of noncompensation for clothes-changing time lasted for a sufficiently long time, with sufficient knowledge and acquiescence by Kerry's employees, that the policy became an implicit term--a 'custom or practice'--under the CBA." *Id.* at 1069.   The court held that proof that the issue was raised in negotiations by the union "is one way, but not the only way, to prove knowledge and acquiescence by union employees." *Id.*[23]

The Court's real question must be whether both parties, being fully informed of the

---

[22] This Court first applied *Cagle's* in *Conerly v. Marshall Durbin Co.*, 2007 WL 3326836 at *7 (S.D. Miss. Nov. 6, 2007).   As this Court found in *Conerly*, the *Cagle's* decision was based upon a "long history of negotiation of issues between the employer and the union and certain specific knowledge by principles of the union regarding the very issue of donning and doffing." *See Conerly v. Marshall Durbin Co.*, 2007 WL 3326836 at *7 (S.D. Miss. Nov. 6, 2007) (denying summary judgment because record did not support similar factual findings).

[23] In *Kassa*, the court argued that "the term 'custom or practice' is broad enough to capture a long-standing practice by an employer of nonpayment for clothes-changing time-even if the issue of payment for such time has not been raised in union-management negotiations-provided that the employer can demonstrate that the practice of nonpayment was sufficiently long in duration and that its employees knew of and acquiesced in the practice." *Kassa v. Kerry, Inc.*, 487 F. Supp. 2d 1063, 1068 (D. Minn. 2007).

relevant facts, chose to exclude compensation for donning and doffing activities.[24]  In that instance, § 203(o) operates to remove from the category of "hours worked" under the FLSA any time that could have been compensable, but had been bargained away by union representatives under a *bona fide* CBA.  The employees would then no longer be entitled to the "full protection of the minimum standard" of the FLSA because they would have struck an "agreement for something different." *See Livadas v. Bradshaw*, 512 U.S. 107, 131 (1994).

The CBA itself is a holistic, all-issues answer to workplace concerns and compensation issues relevant to the employees.[25]  The agreement is not a contract of adhesion, and represents a complete compact between sophisticated parties of comparable bargaining strength.[26]  The Court has no reason to doubt that negotiations were fair or were not conducted in good faith by both parties, and there is no allegation that either side was denied an opportunity to raise an issue it

---

[24] The Plaintiffs also argue that the sanitary and safety items are not "clothes" as contemplated by the statute, and merely slipping them over their street clothes is not "changing clothes" as defined in the Act. *See* Pl.'s Res. Br. at 48-50 [Doc. # 50] (June 9, 2008).  The Court finds that the Plaintiffs' reading of the terms "changing clothes" as used in the statute is nonsensical.  The sanitary and safety items worn by the Plaintiffs fit comfortably within the definition of "clothes" as interpreted by reviewing courts, and the suggestion that "changing" should be interpreted only to include "substituting" simply misconstrues the statute. *See Bejil v. Ethicon, Inc.*, 269 F.3d 477, 480 n.3 (5th Cir. 2001) (holding that slipping on a lab coat, shoe coverings, and a hairnet or beardnet to be "changing clothes" under § 203(o) of the FLSA).

[25] Discussing the collective bargaining process, the Supreme Court has said that there "is a congressional intent to create an equality in bargaining power between the employee and the employer throughout the entire process of labor organizing, collective bargaining, and enforcement of collective-bargaining agreements." *See N.L.R.B. v. City Disposal Systems, Inc.*, 465 U.S. 822, 835-36 (1984) (discussing collective bargaining in terms of employee attempting to assert rights under the agreement) .

[26] *See Brentwood Medical Associates v. United Mine Workers of America*, 396 F.3d 237, 240 (3rd Cir. 2005) ("A collective bargaining agreement represents a contractual accord reached between an employer and its employees.").

felt was significant.[27]

The Plaintiffs have failed to raise any genuine issue of fact that precludes this Court from recognizing the "practice" of non-compensation approved by the CBAs.  In so finding, this Court goes one step beyond the rationale of *Arcadi* to state that when employees and union representatives are conclusively aware of the facts surrounding compensation policies for changing clothes at the beginning and end of each workday, and reach an agreement under a CBA that does not compensate employees for the time, a "practice" exists under the CBA sufficient to invoke the § 203(o) defense.[28]  Even in the absence of a long-standing tradition of non-compensation, the practice established under the terms of a fully and fairly negotiated CBA makes these claims untenable under § 203(o).  The Court finds that this reading of § 203(o) best reflects Congressional intent in adopting the statute to "curtail employee-protective interpretations of the FLSA" on compensation issues settled by a CBA.[29]

_____

[27] Courts interpreting CBAs will generally use traditional principles of contract interpretation to the extent that such principles are consistent with federal labor law.  But because CBAs are contracts of a special type, an agreement that is ambiguous "can be more readily expanded by implication than those of contracts memorializing other transactions." *United Paperworkers Int'l Union, AFL-CIO, CLC, v. Champion Int'l Corp.*, 908 F.2d 1252, 1256 (5th Cir. 1990).  Yet because the CBAs in this case are not susceptible to more than one interpretation, their terms are not ambiguous, and hence not open to broader construction to benefit the employees. *See Nichols v. Alcatel USA, Inc.*, 2008 WL 2469407 at * 9 (5th Cir. June 20, 2008).

[28] If reviewing courts labor to find extrinsic evidence of a "custom or practice," beyond the existence of a fairly negotiated CBA and a team of union negotiators and employees that were fully aware of the relevant compensation practices, then courts will inadvertently encourage employees and union negotiators to either remain ignorant of compensation policies or to avoid any mention of them, lest they be seen to have created a custom or practice that waived a potential claim for compensation under § 203(o).  An outcome that encourages artifice between parties negotiating a CBA is wrong from a policy perspective, and risks that reviewing courts will simply reward parties for not faithfully negotiating the CBA in the first instance.

[29] The alternative holding would require the Court to presume that Union representatives were unaware of how their employees were compensated, an inference not supported by the current facts.

23

Yet because both the Prepared Food Plant and the Debone Plant were not unionized until 2004, there was no collective bargaining agreement in place between June 3, 2003 and September 21, 2004.[30]  Therefore, the custom or practice recognized by this Court under § 203(o) cannot bar claims for hours worked between June 3, 2003 and September 21, 2004.  Those claims survive summary judgment.

**4.  The continuous workday rule**

The Defendant also claims that pre- and post-production walk and wait times are not compensable.  According to the Defendant's logic, "[b]ecause changing into and out of standard clothing and washing by Koch Foods' employees are not compensable activities, the pre- and post-production activities are likewise not compensable." *See* Def.'s Br. at 38 [Doc. # 43] (May 16, 2008).  Koch Foods relies on a recent opinion letter from the Wage and Hour Division of the Department of Labor, which states that "activities covered by section 3(o) cannot be considered principal activities and do not start the workday." *See* DOL Wage & Hour Op. Ltr. FLSA2007-10 (May 14, 2007).

---

Perhaps more importantly, overreading the contractual silence on donning and doffing ignores the possibility that both sides in the negotiation of a CBA might have real and legitimate reasons for omitting an explicit reference to these issues.  Based on the sophistication of each party, the Court finds it inconceivable that the Union was unaware of the compensation policies of Koch Foods to the extent that it could not have fully and fairly bargained them away based on other priorities.  Merely because a potential change in the law makes these issues appear more enticing in hindsight does not mean this Court should upset the agreement struck between the parties.  Congress enacted § 203(o) to protect employers from precisely this kind of post-mortem attack on labor contracts every time a court interprets a gray area on FLSA compensation issues.

[30] The limitations period in this case begins on June 2, 2003, under the three-year statute for willful violations.

24

Yet because this Court has found a genuine issue of material fact as to whether the donning and doffing are integral and indispensable to the employees' activities, the continuous workday rule does not operate to bar the Plaintiffs' claim for pre-shift, post-donning time as well as post-shift, pre-doffing time. Although the act of "changing clothes" itself is barred based on § 203(o) discussed *supra*, the activities that occur after changing into sanitary gear and before changing out of sanitary gear are not impacted by the defense.[31] If the jury determined that donning and doffing this gear was integral and indispensable, their commencement would trigger the "continuous workday rule," and might make the walking and waiting time at issue compensable. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 29 (2005) (defining continuous workday as "the period between the commencement and completion on the same workday of an employee's principal activity or activities.").

## IV. CONCLUSION

The Plaintiffs have raised a genuine issue of fact that donning and doffing of sanitary equipment constitutes "work" under the FLSA, irrespective of the minuscule amount of physical or mental exertion required to secure the items. And based on the evidence before it, this Court cannot conclude that the donning and doffing of this required sanitary gear is neither integral nor

---

[31] Although the statute precludes recovery for time spent washing and "changing clothes," it does not affect the fact that these activities could be the first "integral and indispensable" act that triggers the start of the continuous workday rule for subsequent activities that are not covered by § 203(o), such as post-donning sanitation and travel time. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005) (holding that the Portal to Portal Act "does not exclude walking from [the locker room where sanitary and safety gear is put on] to another area within the plant immediately after the workday has commenced.").

indispensable to the Plaintiffs' principal activities.  However, the Plaintiffs have failed to raise

any issue of fact that precludes this Court from recognizing the "practice" of non-compensation

approved by the applicable CBAs for the relevant activities that would trigger application of the

§ 203(o) defense.  The time employees spend "changing clothes" at the beginning or end of each

workday is therefore not compensable, subject to the statute of limitations issue discussed *supra*.

Finally, the Court cannot dismiss the Plaintiffs' claim for post-donning and pre-doffing walk and

wait times under the continuous workday rule.[32]

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Defendant's motion for

summary judgment [Doc. # 40] is **granted in part and denied in part**, and the Plaintiffs'

motion for summary judgment [Doc. # 44] is **denied**.

SO ORDERED AND ADJUDGED on this, the 23rd day of July, 2008.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE

---

[32] Based on the Court's findings, the only claim of the Plaintiffs now barred by summary judgment is the time spent "changing clothes" before and after their shifts pursuant to § 203(o).  Any claims for: (1) time spent immediately following the donning of sanitary and safety gear; (2) time spent during the day surrounding their two 30 minute breaks; and (3) time spent immediately preceding the doffing of sanitary and safety gear, each remain viable and survive summary judgment.